Good morning, Your Honors. May it please the Court, I'm Judith Wood. I'm representing the appellant here, Mr. Sobi. Sobi from Yemen. He is trying to convince the Court that he is eligible for both asylum, withholding, and relief under the Convention Against Torture. He filed a motion to reopen with the Board of Immigration Appeals, which is the appeal of which is before you today. In the government brief, the government said that country conditions in Yemen have not changed sufficiently to be the case to come under Malti, in which you know that a cop... I don't have to go over the facts with you. You know Malti. So we say that it is similar to Malti, and I have some proof. The government characterizes the father's letter to him, saying, don't come back because you're supporting us, basically. But if the Court doesn't mind, I'm going to read an excerpt from the father's letter, in which the father... The letter in which he also says, I need the money to help support me? Yes. Right. But the father, the main, that's the last sentence. The main part of the letter says, and I quote, the situation is worse and worse every day, especially after what and social positions all over the country, especially now this last December, where more kidnappings and confrontations between government and tribes. This increased in very much scary way because government is attacking suspected terrorist places. Tribes are very angry, making confrontations with the government army and killing and kidnapping innocent people who support the government or support American plans or presence here. Son, I warn you very much from coming back to country to help me in any way. That's a different letter than what the government has quoted. The father is warning him not to come back. As you know, Mr. Osama bin Laden was born in Yemen. There's a tremendous movement in the world called Al-Qaeda. Much of it is energized and emanates from Yemen. Mr. Sobe Sobe has been very cooperative with the United States government in working against terrorism. And he has been working with another agency. That agency spoke this morning to the lawyer from the government. And it would be most probable, I would say definite, that Mr. Sobe Sobe would be arrested and killed, killed, upon arrival in Yemen. You're suggesting counsel by the fact that he is cooperating with another agency that what? That's not grounds for a court to order the BIA to reconsider asylum or to exercise discretion. That sounds like that would be grounds on which the executive would choose to exercise some other kind of discretionary relief in order to keep him in the United States. You're absolutely correct, Your Honor. However, neutral people and neutral objects, as we have seen in our country, become weaponized. Things that you don't think are going to become weapons, like planes, become weapons in our country and all over the world. Because he is doing what he's doing, the Yemen government will not tolerate his presence. He's basically a traitor to Yemen now. Because he's doing what he's doing, you mean by cooperating with a... By being a fashion designer. Is that what you mean? No, it is not what I mean. What do you mean? I wouldn't say that, Your Honor. He is cooperating with an agency in the United States government, which I'm not at liberty to say out loud in court. Right, counsel. But if you can't disclose those things to us, you can't expect us to use that as grounds here. I don't understand anything in the law that requires, that suggests that we should use that fact as grounds for ordering BIA to reconsider its decision to reopen this matter on asylum. But it sounds like you might be able to go to that agency and ask for its assistance in convincing the executive to exercise its discretion to allow Mr. Sobi Sobi to remain in the United States. And certainly we would be doing that, Your Honor. But I'm just assuring you, absolutely, with no doubt in my own mind, that if he were flown to Yemen, he would be killed within a week. There's no doubt in my mind, and as you know, I've done hundreds of these cases, and I don't feel as strongly about all of them. This man will be killed when he goes to Yemen, tortured and killed, no doubt, because of his affiliations in this country. Now, when he was growing up in Yemen, he was brought up by a Christian woman. His mother was brought him to a Christian school. He was brought up in a Western fashion. The briefs go through his Westernization. I don't have to reiterate that here. And I'm not weighing the case in on his being a fashion designer or wearing an earring. He's very political, actually, and has become political here post-9-11. When he was living in Yemen, he refrained from becoming a very political person, although there was some affiliation through the family. It is post-9-11 that he has become involved in the struggle against terrorism in this country. What's he been doing here in the United States politically? I'm not at liberty to divulge. As you know, this is taped. Anyone can listen to it. I'm not at liberty to divulge all the details of that. But I can assure you, I can assure you that he will be killed in Yemen. Counsel, this is here before us on a motion to reopen. And the standard for review on this motion is a 45-day period. Can you tell us why the BIA abused its discretion? I don't think it considered the evidence in a thoughtful way, Your Honor. As I read the father's letter, it's not about Sobe supporting his father in Yemen. It's about the father reporting that the situation in Yemen is drastic. It's out of control. The tribes are fighting with each other. The government isn't able to control terrorism. And it's really quite dangerous. And the father begs Sobe, listen, the father loves Sobe. You know, he'd like to see his son. But he's telling him, absolutely in no uncertain terms, not to come home. What Judge Bivey is asking you is what would be the basis for relief? When we – if we found that that was an abuse of discretion, we would say that was an abuse of discretion in that. And he would shoot his son in that way. The board did not give careful consideration to the evidence submitted. All the reports about the ongoing strife, terrorism, and lawlessness in Yemen, the government is not able to control the terrorist elements in that country, which have given rise to horrific events in this country and in Yemen itself against this country. Ms. Wood, what are we to do with the last sentence in the BIA's order, which says – the second – the next to the last sentence says we're not convinced that you've met the motion in the exercise of discretion due to his lack of due diligence in pursuing relief. Now, that's different from saying we're going to deny the motion to reopen. This is saying even if we were going to grant the motion to reopen, we would still deny you relief because you haven't been – you haven't been diligent. He had a – he had a bag and baggage – whatever that – whatever that phrase is – a bag and baggage letter issued to him. He didn't show up. He didn't let BIA know what was going on. He sort of sat on his rights for a number of – for a number of years. Well, when Sobi Sobi, in pro per, went through his BIA case, his court case and his BIA case, and we finally met him to do the Ninth Circuit case, Mr. Sobi Sobi was detained in Lancaster. He was detained by ICE. After he was released by ICE on his own recognizance, and he has been diligently reporting to ICE on a monthly basis, when it became obvious by the Ninth Circuit decision that they had – that this body had denied asylum, we sought to reopen the case on the basis of convention against torture, since that remedy was not available to him when he tried his own case prior to 1998. It was not available, and now – and when he did his motion to reopen, it became available. But there's a footnote in the BIA's opinion telling you that you're – that you're out of time and that you have conceded that you failed to meet the filing deadline. Well, the – the timing would have been 90 days after the BIA decision. At that point in time, he was not our client. We did not have contact with him. He may not have been cognizant of the law regarding – But he has missed the filing deadline, you concede. 90 days, which – which was not really part of the statute, that 90-day limitation at that point in time. That's why, you know, it wasn't limited to 90 days. You could have had a longer time to reopen for convention against torture. Moreover, changed country conditions obviate the need for the 90-day filing period. And certainly, you would agree, Your Honor, that the conditions in the world and in Yemen have changed drastically since 1997, when Mr. Sobey first had his case before the immigration judge. I rest. You may want to save your last seven seconds for rebuttal. Okay. Thank you. We will hear from the government. Mr. Greenstein? May it please the Court, Sol Greenstein, on behalf of the Respondent, Alberto Gonzales. The petition for review should be denied. It was not an abuse of discretion, for the board to have denied the petition as much as reopened is untimely and has not fallen under the changed circumstances, exception to timeliness. Counsel, before you go any further, I hate to interrupt you so quickly, so early on, but I do have a preliminary matter I'd like to take up with you I did not take up with Ms. Wood. And that is this. The BIA denies the motion to reopen. It then adds that last sentence, which I mentioned to Ms. Wood, that it says even in the exercise of our – even if you were otherwise qualified for asylum or camp relief, we would deny it in the exercise of discretion. Does this Court have jurisdiction to consider a BIA's discretionary denial of relief? Well, considering that the underlying – considering that the underlying reliefs are not discretionary, the Respondent believes that the decision can still be considered by this Court. However, it still has the power to affirm the BIA's denial of the petitioner's motion to reopen based upon discretion, in other words, based upon the Fugitive Disentitlement Doctrine. And also, contradicting the petitioner's narration of events, the evidence reveals that the petitioner received a bag and baggage letter. He did not show up for deportation. He acknowledged in the Los Angeles Times article, interviewing him after he had been picked up by the service, that he lay low after learning of the final removal order. In other words, he hid from the government. He did not want to get removed. And he's now asking – and he's now asking the Court to help him now. Of course, that doesn't tell us much about whether there were changed conditions in Yemen since the previous denial. Changed conditions, as I take it, were the September 11 attack on the United States, the fact that Osama bin Laden was from Yemen, and that the tribes have now become quite militant against westernized people, if you will, in the United States. He's become very westernized, I don't know whether more so, since he was earlier. But he says, these are the changed conditions. And I suspect the government could say, well, okay, those are the changed conditions, but the VIA said he still has not presented a prima facie case for asylum relief, even with those changed conditions. Is that your argument? No, that's not my argument, because the changed conditions have to arise in one country of nationality or the country to which deportation has been ordered. All of the changes articulated by the petitioner are personal changes. They haven't arisen in Yemen. The petitioner notes that he's changed his hair color, he has earrings now, he has tattoos, and he has a goatee. However, these are clearly personal changes. These aren't changes in Yemen. These aren't changes in country condition. And a clear perusal of the record illustrates that country conditions have not worsened in Yemen, and in fact, they've improved. For example, the second most recent article submitted by the petitioner, a New York Times article entitled Warlord Webb thwarts terror fight in Yemen, states, President Saleh has taken steps to root out extremists and his security forces have detained many people who receive training at Al-Qaeda military camps. Another article authored by the International Christian Concern entitled Yemen, Christian Persecution in Yemen, states under the section extremist groups that there are local extremist groups, but these groups have never demonstrated country ward coordination or solidarity. Accordingly, the evidence does not establish that country conditions have worsened in Yemen. Right. Mr. Greenstein, help me with this, just the phrasing of it, if you would. He has to show changed conditions. I think we all agree to that. Correct. Well, the passage of time is a changed condition. He's older. The country has different people. There are a lot of things that change over the time. And you can say, well, these are all changes of conditions. But the conditions have to change to an extent that would at least prima facie entitle him to eligibility for asylum. Is that correct? Correct. The petitioner must now establish a reasonable likelihood of succeeding on his application for asylum or for withholding of deportation. And he simply has not made that showing. Importantly, in the asylum context, the petitioner still hasn't posited that he falls under a protected ground for asylum. The petitioner's questionization cannot be considered that comprising a petitioner social group because the characteristics underlying the petitioner's construction of westernization, all the characteristics are immutable. His hair color, earrings, tattoos and goatee, they're all physical characteristics. They're not immutable. They're changeable. Accordingly, he hasn't... Except the holes in the ears. Or maybe even they grow over. I don't know. I've never had an earring, Your Honor. I haven't either, so I don't know. So accordingly, he doesn't, he still hasn't posited a basis for asylum. And I would note, this court denied the petitioner's petition for review of the board's denial of asylum withholding of deportation in 2000. And this court stated, Sobe testified that he was harassed, threatened and jumped because of his refusal to join the Brothers of Islam. He did not, however, show that the extremists sought to recruit him because of any specific characteristic shared by westernized Yemenis or because of any opinion he held or was perceived to have held. Similarly, the petitioner still does not have a cognizable basis for asylum. His change in personal circumstances, most particularly his physical changes, do not constitute changed circumstances arising in the country of nationality. You know, you are arguing that point, and I'm not suggesting it's not a valid point, but his counsel didn't argue those points. She said she wouldn't argue those points, but she was concerned about what changes in the country. And she did argue changes in the country. Well, in counsel's brief, a lot of the petitioner's physical changes are indeed covered. I'm not suggesting it's not there. That's why I asked the question. I thought she was relying on it. She said she's not. And she talked only about changes in the country. And maybe you want to address that briefly. You've got still some time. Well, I would simply note that changes in Yemen haven't changed sufficiently so now that the petitioner has a reasonable likelihood of prevailing on his application for asylum or withholding of removal, withholding of the abortation. Well, let me just give you in a nutshell what I understood her argument to be. She said that the government considered the letter but put emphasis on the wrong point and that there's evidence in the letter to suggest that the father described a dangerous situation. And she wants, on reopening, to have an opportunity to present it and to argue that point. And is she wrong? I don't know whether she's wrong about whether we should reopen, but are the facts as stated by the father factual? Sufficient for reopening? Absolutely not. First of all, the letter was unsworn. Secondly, it's the second letter that was submitted by the petitioner, the first giving a more general description, which states the financial imperatives for Sobe remaining in the United States. Moreover, other evidence submitted by the petitioner was unsworn. For example, the Idris affidavit was unsworn. This is the petitioner's friend that returned in 1999 to Yemen and allegedly was harmed upon returning. It should further be noted that this is the letter describes, Mr. Idris's letter describes 1999 facts, and it took the petitioner three years to submit a motion to reopen, to apply for withholding of deportation pursuant to the Convention Against Torture. And this is the letter that the government enacted regulations in March of 99, allowing one to apply by June 21st, 1999 for torture convention relief. No motion was submitted until three years later. Now to what extent does the BIA have the obligation to explain its denial of the motion to reopen in the way you're explaining it to us? Well, because apparently it didn't do that. It just said, you know, it cited his argument about the following terrorist attacks and his Western appearances. And then they say, but they're not convinced he's made out a prima facie case for eligibility. And that may be, that might be a legitimate finding, but they don't discuss the things that you've been telling us as to how they got there. Right. Well, it's implicit in the fact that they found that there wasn't prima facie evidence to warrant reopening. And Your Honor, I'm out of time. I could continue answering my question if the Court permitted. Yeah, I'd like to hear your answer. And finally, case law holds that the Board is not required to write an exegesis in every case to reopen. And this Court obviously has the power to review the record to decide whether or not the Board's decision was supported by the evidence in the record. Thank you. Ms. Wood, we'll give you a minute. I have seven minutes for you both. I have a few things to say. We have the BIA decision dated June 17, 1998, in which the Board says that although they find that he has subjective fear, he doesn't come within the eligibility standards because of the five grounds. He doesn't meet one of the five grounds. In the October 30, 2003 decision, the Board said that he hasn't made a prima facie case. And I understand, Your Honor, what you're talking about when you say you have jurisdiction over a discretionary decision. Under the REAL ID Act, you may not. That has yet to be litigated in the courts. The REAL ID Act actually strips this Federal court of discretionary decisions. Does the REAL ID Act apply to this proceeding? Well, it may and may not. I think that that will be litigated in the courts, whether it's retroactive on that particular issue or not. As you know, retroactivity is something that is a very important issue in these cases, and it may be litigated in this case. However, I would argue that it is not relevant in this case, that it does not apply to this case. But even if it does, Sobe Sobe is applying not only for asylum withholding, but relief under the Convention Against Torture. And as you know, under the relief cited under, described under the Convention Against Torture, you do not have, the Respondent does not need to fall into one of the five grounds. The persecution does not have to be based on one of those five grounds. It can simply be that there is a clear probability, a likelihood, that the person will be tortured in his country, and that torture Something in the record has to suggest that the Governor would argue, I expect, that there's nothing in this record that suggests that he's going to be subjected to torture. But also, it doesn't Is there? Let me just finish my thought for a minute, because it's not only the government that comes under the Convention Against Torture, but acquiescence of the government. You know, the difficulty, Ms. Woods, is he's not going to get to rebut. You are here for rebuttal, and that argument, the point you just made, wasn't made in your main speech. And he's not coming back. The government isn't going to get to rebut what you now are bringing up as a new argument. Do you understand what I'm saying? Yes, Your Honor. Do you agree? If I may just say it. Well, I do concede, Your Honor. All right. But if I may just voice it. What basically the father's letter is saying, and some of the reports on Sobey Sobey is afraid of, is not so much the Yemen government, but the tribes, al-Qaeda, and all these warring factions in the country, which the Yemen government is capable to control. And that is why Sobey Sobey is in so much danger if he returns there. Nobody really knows exactly what the Yemen government is about. It changes, as most of these governments in countries where there is a lot of terrorism. The government changes because there's a lot of tension as to who's going to control that government. You've used the term, and the record is here. What I thought you were going to say to us when you came up, he's been hiding for three years. He didn't do it. The record shows what he did and what he didn't do. And I thought you were going to give us an explanation as to why he did today for three years, and why he didn't come forward, and why he didn't respond to the bag and baggage letter. And those things, we're going to have to look at the record, and we'll see what it says. And we've had an opportunity to have an explanation, and we haven't got one. Well, Your Honor, I can only speak the truth here. I cannot fabricate something which I do not know about. I was not his lawyer then. I don't know why he did that. Thank you. Thank you, counsel. I appreciate the arguments of both counsel. And so that you know we're not going to decide that point against you, he might have not appeared because he thought, when I do, I'm going. And I might as well delay going as long as I can. And of course, when he did, he did go. So it isn't necessarily cut against him, but some explanation would have been, would have assisted his cause, in my opinion. I don't know what his answer would have been, but as his counsel, you could have sure found out. You could have asked him, even though you weren't his counsel at the time. I'm not criticizing you, but that's a hole in the record, don't you think?
judges: Farris, Thompson, Bybee